# Harn v. Milwaukee Tool & Machine Company, Inc.

*John G. Good, Jr.,* for plaintiff.

*Richard J. Mills,* for defendant Milwaukee Tool & Machine Co.

*James F. Manley,* for defendant Tannetite, Inc.

WALKO, *J.*, September 27, 1984—On January 31, 1980, plaintiff Harn was injured on his employer's premises while operating a vertical band saw. Plaintiff brought this trespass action against defendants and alleged theories of strict products liability in tort, negligent design and breach of warrant. Defendant Milwaukee Tool and Machine Co. (Milwaukee) designed, manufactured and delivered the finished machine to plaintiff's employer. Defendant Tannewitz, Incorporated (Tannewitz) supplied the component saw and delivered it to Milwaukee's plant.

Now before the court is Tannewitz's timely motion for summary judgment. In support of the motion, Tannewitz submitted as exhibits, the report of plaintiff's engineering expert and an affidavit of Milwaukee's president.

The engineering report, compiled by James P. Romualdi, P.E. of Forensic Consultants and Engineers, Inc., reviews the details of the injury, describes the operation and manufacture of the machine and sets out minimum safety standards as they are established by a national board. The report enumerates two design features as being defective and instrumental in causing plaintiff's injury: The lack of a cage or guard to protect the operator's hands from the blade and the electric eye which in its current design "creates a false sense of security on the part of the operator". Significantly, the report notes that Tannewitz's band saw was assembled into the total unit by Milwaukee.

Tannewitz's second exhibit is the affidavit of Milwaukee's Corporate President, Richard G. Mumper. Its principal statements are as follows:

1. The entire equipment sold to plaintiff's employer was designed and manufactured totally by Mil-

waukee, and all component parts were selected by Milwaukee.

2. At the time of delivery of the band saw by Tannewitz to Milwaukee, there was no defect in design or manufacture of the product.

3. Milwaukee did not advise Tannewitz as to the expected and anticipated use of the band saw.

4. The band saw as sold to Milwaukee was inoperable without addition of controls and components needed to activate the saw.

5. All operating controls, guards as well as any safety devices installed on the equipment were all designed by and made a part of the ultimate product by Milwaukee.

6. Tannewitz did not have any input into the design, construction, or production of any machine controls.

7. All protective devices on the equipment were designed, manufactured, and produced by Milwaukee.

8. The design, installation, and sale of the electric eye control for the machine was that of Milwaukee.

9. The pusher bars and their installation in the product were the design of Milwaukee.

In addition, Milwaukee's admissions in response to Tannewitz's request contain virtually identical statements. Although not submitted as exhibits, the admissions form a part of the record and may be considered for purposes of this motion. Ritmanich v. Jonnel Enterprises, 219 Pa. Super. 198, 280 A.2d 570 (1971).

Plaintiff has not submitted exhibits. In urging the court to deny summary judgment, plaintiff contends only that the issue is controlled by Pennsylvania's Nanty-Glo rule. Known generally as the demeanor evidence doctrine, it forecloses entry of summary judgment when questions of credibility

leave a genuine issue of material fact. Where the movant can prevail only by use of testimonial affidavit, the credibility of the affiant creates a genuine issue of fact so that summary judgment is not appropriate. Borough of Nanty-Glo v. American Surety Co., 309 Pa. 236, 163 Atl. 523 (1932); 2 Goodrich-Amram §1035(b):4 and cases cited therein.

In brief, plaintiff attacks only the engineering consultant's report. This, plaintiff contends "in no way eliminates Tannewitz as the primary or contributory tortfeasor (sic), and to the contrary leaves open the question of what features could have been incorporated in this machinery, including the saw, that would have prevented this accident".

If there is no genuine issue as to any material fact and if the moving party is entitled to a summary judgment as a matter of law, the court may enter summary judgment in his favor. Ritmanich v. Jonnel Enterprises Inc., supra. Under the standard as stated, we are constrained to agree with plaintiff as to the engineering report.

Questions raised by the other exhibit, Milwaukee's affidavit, require more than a citation to the Nanty-Glo rule. The decisions of our courts have prescribed a two-part process for ruling on summary judgment motions. First, the court, after considering the movants' exhibits must note whether or not the opposing party has submitted depositions, affidavits, admissions or other exhibits of its own. The rules do not permit the opposing party to stand on the contested averments of the pleadings in sufficient defense against summary judgment. Amabile v. Auto Kleen Car Wash, 247 Pa. Super. 240, 376 A.2d 247 (1977); Santoro v. City of Philadelphia, 59 Pa. Commw. 114, 429 A.2d 113 (1981). In explanation of this rule, our Supreme Court has reasoned that affidavits may serve as proof of facts

while pleadings do not. Phaff v. Gerner, 451 Pa. 146, 303 A.2d 826 (1973). In addition, express language of Pa.R.C.P. 1035(d) clearly states the same procedural requirement:

"An adverse party may not rest upon the mere allegations or denials of his pleadings, but *his response, by affidavit* or as otherwise provided by the rule, *must set forth specific facts showing* that there is a *genuine issue* for trial. If he does not respond, summary judgment, if appropriate, should be entered against him (Emphasis added.)

Plaintiff Harn offers no exhibits to oppose those of Tannewitz. As stated earlier, he elected to rest on the pleadings. Rather than foreclosing all further inquiry, absence of exhibits merely takes the analysis to a second stage, allocating the burden of proof. Even where, as here, the non-movant fails to file counter-exhibits, the court must determine whether the movant has satisfied the burden of showing that there remains no material issue of fact. Marchese v. Marchese, 475 Pa. 625, 326 A.2d 321 (1974); Santoro v. City of Philadelphia, supra. Where the proof supporting the motion is documentary and has a high degree of credibility the opponent must produce convincing proof attacking the documents in order to sustain his burden. See, Bauman, A Rationale for Summary Judgment, 33 Ind. L.J. 467 (1958).

Assessing Tannewitz's affidavit against this standard, we are satisfied that Tannewitz has shouldered its share of the burden. The exhibit is obviously documentary. Moreover, we are impressed with its credibility. If the affiant, Mr. Mumpers, were to testify at trial to the particulars of his affidavit, a jury would be entitled to give that testimony great weight. Classic indicia of reliability would abound. The statement is the product of per-

sonal knowledge and it is inconceivable that cross-examination would show that Mumpers was in no position to know design and manufacturing details about the machine. Equally remote is the possibility of faulty recollection since the testimony would be supported by a prior written statement. Most convincing of all, however, is the legal effect of the affidavit and hypothetical testimony based upon it. The recitations of the affidavit clearly militate against the liability interest of the affiant's corporation. By committing itself to such a damaging body of admissions, Milwaukee displays an intention, or at least a willingness, to stand solely liable to plaintiff. We view the affidavit through the rationale underlying declarations against interest as a hearsay exception; Milwaukee would not exonerate Tannewitz so broadly if it did not believe in the trust of its admissions. Having so determined, we conclude that Tannewitz has met its burden.

Plaintiff's response to the shifting burden consists of a vague assertion that credibility questions cloud the affidavit thereby precluding entry of summary judgment. Our reading of Rule 1035(d) requires the opposing party, confronted with a movant's credible exhibits, to do more than invoke the Nanty-Glo rule in order to resist summary judgment.* If the credibility of the movant's witness is

---

*The rationale for requiring affidavits in opposition to a motion for summary judgment is best understood in light of the reasons for permitting the motion. Pa.R.C.P. 1035(d) was taken verbatim from the Federal Rules of Civil Procedure 56(c), which offers this reasoning for the rule:

"A typical case is as follows: A party supports his motion for summary judgment by affidavits or other evidentiary matter sufficient to show that there is no genuine issue as to a material fact. The adverse party, in opposing the motion, does not produce any evidentiary matter, or produces some but not

challenged by the opposing party and specific bases for impeachment are shown, summary judgment should be denied and the case should be set for trial. The opponent must point to some facts which may entitle him to judgment, or which refute the movant's proofs to a material degree. The burden is not met by dredging up the old, reliable bugaboo of credibility and proceeding to trial with the bald hope that jurors will not believe the movant's evidence when it is put before them. This is especially true where the non-moving party has had ample opportunity to examine the movant and its witnesses at length and under oath. We apprehend that to be the case with the instant parties.

Turning to the products liability issues relevant to this motion, we find that Tannewitz is entitled to judgment on the law. With respect to power saws, the court of numerous jurisdictions have conducted litigation premised on all the theories advanced by plaintiff. There are cases of negligent failure to warn or instruct. Hopkins v. Chip-In Saw, Inc. 630 F.2d 616 (C.A.8 1980) (applying Arkansas law), Hagan v. E. Z. Mfg. Co., 674 F.2d 1047 (C.A.5 1982) (applying Oklahoma law), Poland v. Beaird-Poulan, 483 F. Supp. 1256 (W. D., La. 1980), Perkins v. Emerson Elec. Co., 482 F. Supp. 1347

---

enough to establish that there is a genuine issue for trial. Instead, the adverse party rests on averments of his pleadings which on their face present an issue . . . *The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.* The . . . doctrine, which permits the pleadings themselves to stand in the way granting an otherwise justified summary judgment, is incompatible with the basic purpose of the rule . . ." Federal Rules of Civil Procedure, Rule 56, Notes of Advisory Committee on 1963 Amendment, 28 J.S.C.A. p. 416 (Emphasis added.)

(W.D., La. 1980) (applying Louisiana law), Hagans v. Oliver Mach. Co., 576 F.2d 97 (C.A.5 1978) (applying Texas law), Kettinger v. Black & Decker Mfg. Co., 13 Mass. App. 993, 432 N.E. 2d 736 (Mass. 1982), Leonard v. Albany Mach. & Supp. Co., 339 So. 2d 458 (La. Ap. 1976).

There are cases of negligent design. Hagans v. Oliver Mach. Co., supra, Kattinger v. Black & Decker, supra, Flaugher v. Sears, Roebuck & Co., 61 Ill. App. 3d 671, 378 N.E. 2d 337 (1978), St. Pierre v. Gubel, 351 So. 2d 821 (La. App. 1977), Leonard v. Albany Mach. & Supp. Co., supra, Coco v. Winston Industries, 330 So. 2d 649 (La. App. 1975).

There are cases of strict liability in tort. Hagan v. E. J. Mfg., supra, Bundie v. Skil Corp., 489 F. Supp. 19. (E.D., Pa. 1980) (applying Pennsylvania law), Hagans v. Oliver Mach. Co., supra, Perkins v. Emerson Elec., supra, Peterson v. Lebanon Machine Works, 560r. App. 378, 641 P.2d 1165 (Or. 1982), Griffin v. Rockwell Int'l., Inc., 96 Nev. 910, 620 P.2d 862 (1980), Smith v. Smith, 278 N.W. 2d 155 (S.D. 1979), Agostine v. Rockwell Mfg. Co., 236 Pa. Super 434, 345 A.2d 735 (1975), McGoldrich v. Porter-Cable Tools, 34 Cal. App. 3d 885, 110 Cal. Rptr. 481 (Cal. 1973), Stephan v. Sears, Roebuck & Co., 110 N.Y. 248 266 A.2d 855 (N.H. 1970).

There are cases of breach of warranty. Smith v. Smith, supra, Duncan v. Rockwell Mfg. Co., 173 Mont. 382, 567 P.2d 936 (1977), Siemen v. Alden, 34 Ill. App. 3d 961, 341 N.E. 2d 713 (1975), Stephan v. Sears, Roebuck & Co., supra, Suvada v. White Motor Co., 32 Ill. 2d 612, 210 N.E. 2d 182 (1965).

Not one of these cited decisions supports liability against a supplier of a non-defective component without knowledge of anticipated end use, without

design input and without installation or servicing responsibility.

Contemporary jurisprudence has witnessed a tidal surge toward broadened civil liability. In no field of the law is the fallout of the so-called liability explosion more palpably felt then in the defendant product area. Section 402A of the Restatement of Torts and §§2-313-314 of the Uniform Commercial Code have rendered negligence irrelevant and stretched the concept of fault to embrace conduct once deemed wholly blameless.

In the seminal Escola decision, the late Justice Traynor of the California Supreme Court noted three social factors justifying a break with traditional standards for recovery. First, manufacturers themselves, through sophisticated advertising and other aggressive marketing efforts, encourage public reliance on mass produced items. Second, plaintiff's injuries are not "a matter of indifference" merely because they occurred without negligence. Finally, the manufacturer, presumably through insurance and cost accounting, is better equipped to meet the financial consequences of injury. Escola v. Coca-Cola Bottling Co., 24 Cal. 2d 453, 150 P.2d 436 (1944).

Despite this and all that has followed, recovery based on the theories advanced here will not lie absent a meaningful connexity between defendant's product and plaintiff's injury. An automobile may travel the highway with a defective braking system. That defect may cause the right front tire to pass over the body of a pedestrian. Notwithstanding reasonable consumer expectation, the gravity of injury and considerations of corporate solvency, the law has not become such a slavish handmaiden of recovery as to permit judgment against the tire manufacturer. Taking as true the affidavit of Milwaukee

in this case, we find the meaningful connexity between the saw and plaintiff's injury is lacking. For all the reasons herein, we enter the following

## ORDER

And now, this September 27, 1984, after due consideration of defendant Tannewitz's motion for summary judgment and the arguments of counsel in connection therein, it is ordered and decreed that said motion be granted and that defendant Tannewitz be dismissed from the case, and the above-captioned case between plaintiff and the remaining defendant, Milwaukee Tool and Machine Company, Inc., be placed on the trial list.