972 F.2d 1336
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Ken BACHE, Plaintiff-Appellant,
v.
CATERPILLAR, INC., a Delaware corporation, Defendant-Appellee.
 No. 90-35548.
 United States Court of Appeals, Ninth Circuit.
 Submitted July 9, 1992.*
Decided July 24, 1992.
 
 Before ALARCON, RYMER and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Ken Bache ("Bache") appeals from the judgment following a jury trial denying recovery for injuries he sustained while operating a tractor manufactured by Caterpillar, Inc. ("Caterpillar"). Bache contends that the district court committed reversible error when it refused his proposed instruction on Montana's strict liability law. We disagree and affirm.
 
 I.
 
 3
 Bache suffered head injuries on November 26, 1985, while using a Caterpillar D6C tractor in a logging operation. Although the exact cause of Bache's injury is unknown, it is likely that he was struck when the tractor he was operating ran over a fallen tree flipping the trunk up and over the side of his tractor.
 
 
 4
 On July 8, 1988, Bache filed suit against Caterpillar alleging negligence and strict liability. Bache claimed that the tractor was defective because it was not equipped with a protective canopy surrounding the operator's area at the time it left the factory.
 
 
 5
 On May 11, 1990, Bache submitted his proposed jury instructions to the district court. Bache's Proposed Instruction No. 17 (hereinafter "Instruction 17") provided in pertinent part:
 
 
 6
 A product is in a defective condition if it was unreasonably unsuitable or unreasonably dangerous for its intended or foreseeable purpose.
 
 
 7
 On May 30, 1990, the district court impaneled a jury and gave its preliminary instructions. In its initial instructions to the jury, the trial judge stated that Bache was required to prove the D6C tractor "was in a defective condition unreasonably dangerous to the user when it left the factory." On June 6, 1990, after both sides had rested, the judge instructed the jury that:
 
 
 8
 [i]n order to prove the Defendant strictly liable for Plaintiff's injuries, Plaintiff must prove three elements by a preponderance of the evidence:
 
 
 9
 Number one, that the DC6 Caterpillar was in a defective condition unreasonably dangerous to the user at the time it was sold in 1963;
 
 
 10
 Number two, that the defect proximately caused the accident and the injuries of which the Plaintiff here complains;
 
 
 11
 And thirdly, that the defect is traceable to the Defendant.
 
 
 12
 (emphasis added). The jury subsequently returned a verdict for Caterpillar on both counts.
 
 II.
 
 13
 Bache contends that the district court erred when it instructed the jury that he was required to prove that the tractor was "in a defective condition unreasonably dangerous to the user." Bache argues that under Montana law, the proper test for determining strict liability is "whether the product was unreasonably unsuitable for its intended or foreseeable purpose," or whether it was "in a defective condition unreasonably dangerous." Bache further contends that the district court's failure to include the "unreasonably unsuitable" standard in its jury instruction along with the "unreasonably dangerous" standard violated the terms of the Final Pretrial Order in which the district court allegedly established that both standards would govern the proceedings.
 
 
 14
 Ninth Circuit law is split as to whether a district court's refusal of a proposed jury instruction is reviewed under an abuse of discretion standard or de novo. United States v. Ayers, 924 F.2d 1468, 1475 (9th Cir.1991); United States v. Whitehead, 896 F.2d 432, 434 (9th Cir.), cert. denied, 111 S.Ct. 342 (1990). This "intra-circuit conflict may be resolved through en banc proceedings." United States v. Slaughter, 891 F.2d 691, 699 (9th Cir.1989). Such proceedings are not necessary in the instant case, however, because the result would be the same under either standard of review. Id.
 
 
 15
 As a federal court sitting in diversity, we must apply Montana substantive law. See Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938). We review the district court's interpretation of applicable Montana law de novo. In re McLinn, 739 F.2d 1395, 1400 (9th Cir.1984).
 
 A.
 
 16
 Before reaching the merits of the district court's instruction on strict liability, we must determine whether Bache has preserved this issue for review on appeal.
 
 
 17
 Rule 51 of the Federal Rules of Civil Procedure provides, in pertinent part:
 
 
 18
 No party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection.
 
 
 19
 Fed.R.Civ.P. 51. This court has interpreted Rule 51 to foreclose review of a jury instruction in a civil case in the absence of a proper objection. Larez v. Los Angeles, 946 F.2d 630, 638 (9th Cir.1991); Hammer v. Gross, 932 F.2d 842, 847 (9th Cir.), cert. denied sub nom Newport Beach v. Hammer, 112 S.Ct. 582 (1991) (plain error doctrine does not apply where appellant failed to object to jury instruction).
 
 
 20
 This court has recognized one exception to the requirement of strict compliance with Rule 51:
 
 
 21
 [A] jury instruction objection may be preserved in spite of an explicit failure to object provided that the party's previous conduct had made its opposition clear to the court and it is obvious that further objection would be unavailing.
 
 
 22
 Lifshitz v. Walter Drake & Sons, Inc., 806 F.2d 1426, 1430-31 (9th Cir.1986). This exception derives in large part from Rule 46 which states as follows:
 
 
 23
 Formal exceptions to rulings or orders of the court are unnecessary; ... it is sufficient that a party ... makes known to the court the action which the party desires the court to take or the party's objection to the action of the court and the ground therefor; and, if a party has no opportunity to object to a ruling or order at the time it is made, the absence of an objection does not thereafter prejudice the party ...
 
 
 24
 Fed.R.Civ.P. 46. See also Brown v. Avemco, 603 F.2d 1367 (9th Cir.1979).
 
 
 25
 In the instant matter, Bache failed to enter a specific objection to the district court's jury instruction on strict liability immediately before the jury retired to consider its verdict. Although Bache objected "to the Court not giving Plaintiff's Proposed Jury Instructions 10, 11, 12, 16, 17," (emphasis added), he did not provide any grounds for his objection to Instruction 17 as required by Rule 51. Despite Bache's failure to provide a specific objection, we conclude that we may consider his appeal under the exception to Rule 51.
 
 
 26
 On June 5, in the course of oral argument on Caterpillar's motion for a directed verdict, the district court clearly demonstrated that it understood Bache's position, had carefully considered it, and had concluded that Bache's proposed Instruction 17 did not correctly state Montana law regarding strict liability:
 
 
 27
 [Counsel for Bache]: And whether the Court uses the phrase unreasonably dangerous to design (sic) defective, or as I contend, the Court uses the phrase unreasonably unsuitable for any of its foreseeable purposes to define defective, that the--
 
 
 28
 [Court]: We're not going to use unreasonably unsuited.
 
 
 29
 [Counsel]: I got that impression, Your Honor.
 
 
 30
 [Court]: I might say on that point that it seemed fairly clear to me from trying to reconcile all the cases here, that in discussing damages to a product with consequential damages, that the [Montana Supreme] Court did talk in terms of unsuitability. However, in discussing personal injuries, it seems to me that the inquiry is clearly in the area of whether or not there is an unreasonable danger. And that's the Court's ruling, so let's confine your argument to that point.
 
 
 31
 On the basis of this statement by the district court, further objection by Bache would have been unavailing and wasteful of the court's time. Bache's actions were sufficient to preserve the jury instruction issue for appeal.
 
 B.
 
 32
 Turning to the merits of Bache's appeal, we reject Bache's argument that his case was prejudiced when the district court allegedly deviated from the final pretrial order. The final pretrial order merely delineated the contentions of both parties, listed exhibits and witnesses, and authorized further discovery. The order did not set forth legal standards which would govern the proceedings.
 
 
 33
 We also reject Bache's contention that the district court erred in refusing to give his proposed instruction on strict liability. Bache cites only one case, McJunkin v. Kaufman and Broad Home Sys., Inc., 748 P.2d 910 (Mont.1987), in support of his theory that a manufacturer may be held strictly liable if the plaintiff shows either that the product was unreasonably unsuitable or unreasonably dangerous for its intended purpose. The Montana Supreme Court's holding in McJunkin is limited to cases in which strict liability is based solely on damage to the defective product itself. McJunkin does not apply to cases, such as this one, involving personal injury.
 
 
 34
 Montana's strict liability law requires plaintiffs alleging injury from defective products to prove the product was unreasonably dangerous as manufactured. In 1973, the Montana Supreme Court adopted the doctrine of strict liability as set forth in 2 Restatement of Torts 2d § 402A:
 
 
 35
 One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused.
 
 
 36
 Brandenburger v. Toyota Motor Sales U.S.A., Inc., 513 P.2d 268, 272 (Mont.1973) (emphasis added). In 1987, the Montana legislature codified this principle of strict products liability using virtually identical language:
 
 
 37
 A person who sells a product in a defective condition unreasonably dangerous to a user or consumer or to his property is liable for physical harm caused.
 
 
 38
 Mont.Ann.Code § 27-1-719 (emphasis added).
 
 
 39
 Bache argues that McJunkin establishes a new standard for strict liability under which a plaintiff may recover for personal injuries if he can prove that the defendant's product was "unreasonably unsuitable for its intended purpose." We disagree.
 
 
 40
 In McJunkin, a mobile home manufactured by the defendant was found to have numerous defects shortly after its purchase. McJunkin, 748 P.2d at 912-13. The McJunkins sued the manufacturer for the loss in the value and use of the trailer caused by these defects. Id. at 913. They made no claim that they had been physically injured by the defective trailer. The district court refused to instruct the jury that the manufacturer could be held strictly liable on the ground that the McJunkins had failed to demonstrate the mobile home was unreasonably dangerous. Id. at 916.
 
 
 41
 In evaluating the district court's refusal to give a strict liability instruction, the Montana Supreme Court first noted that Montana law expressly permits a strict liability action where the only damage suffered is to the defective product itself. Id. (citing Thompson v. Nebraska Mobile Homes Corp., 647 P.2d 334, 334 (Mont.1982)). In such a context of "purely economic loss," the court reasoned a product could be found defective "without a finding of unreasonable danger." Id. at 918. The court went on to state as follows:
 
 
 42
 We do not adopt a theory of absolute liability for all defects.... However, defining strict liability solely in terms of unreasonably dangerous does not adequately set forth the concept [that manufacturers must bear the loss caused by their defective products]. The proper test of a defective product is whether the product was unreasonably unsuitable for its intended or foreseeable purpose. If a product fails this test it will be deemed defective.
 
 
 43
 Id.
 
 
 44
 Although the Montana Supreme Court did not explicitly limit the McJunkin holding to product liability cases that do not involve personal injury, we hold that its reasoning supports this interpretation. The McJunkin Court was dealing with a product that was defective but not dangerous. In a strict liability cause of action where the only alleged damage is to the product itself, it is unreasonable to require proof that the product is dangerous. In these cases, there is a loss to the consumer merely if the product is "unreasonably unsuitable". Where a party alleges injury, however, the element of dangerousness is critical to the inquiry. A manufacturer should not be held liable for injuries caused by a defective product where that defect does not render the product unreasonably dangerous.
 
 
 45
 As further support for this interpretation of McJunkin, we note that the Montana Supreme Court has consistently employed this "defective condition unreasonably dangerous" standard in all product liability cases involving personal injuries. Papp v. Rocky Mountain Oil And Mineral, Inc. 769 P.2d 1249, 1252 (Mont.1989); Duncan v. Rockwell Mfg. Co., 567 P.2d 936, 939 (Mont.1977); Brandenburger, 513 P.2d 268, 272. See also Scott v. E.I. DuPont De Nemours & Co., 783 P.2d 938, 940 (Mont.1989) (approving a jury verdict where the first question on the special verdict form was, "[w]as the Defendant's product defective and unreasonably dangerous because of an inadequate warning?"); Tacke v. Vermeer Mfg. Co., 713 P.2d 527, 531 (Mont.1986) (approving jury instructions requiring plaintiff to prove haybaler was defective in design and unreasonably dangerous at the time of its manufacture). McJunkin stands alone in holding proof of unsuitability sufficient to recover on a theory of strict liability and is best understood as eliminating the element of dangerousness only in situations not involving injury to the person or property of the plaintiff.
 
 
 46
 Because we conclude that the McJunkin court did not establish a new standard for all product liability actions, but merely set forth an alternative standard where injury is to the product itself, we hold that the district court's strict liability instruction was proper. The district court's instruction fairly and adequately stated Montana's strict liability law as set forth in Mont.Code Ann. § 27-1-719 (1991). Thorsted v. Kelly, 858 F.2d 571, 573 (9th Cir.1988). See also Kisor v. Johns-Manville Corp., 783 F.2d 1337, 1340 (9th Cir.1986).
 
 
 47
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument. Fed.R.App.P. 34(a); Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3