*1044 OPINION
By the Court,
Steffen, J.:
Appellants Milton I. Schwartz, Checker Cab Company and Yellow Cab Company of Nevada (collectively “Schwartz”) filed the instant action against the late Herman Greenspun, Brian Greenspun and their family-operated newspaper, the Las Vegas Sun, Inc. (collectively “Greenspun”).[1] Schwartz alleged claims for defamation and intentional infliction of emotional distress based upon Greenspun’s publication of five articles in the Las Vegas Sun. During the course of the proceedings, the district court twice denied Greenspun’s motion to dismiss pursuant to NRCP 41(e) and Schwartz rejected an offer of judgment made by Greenspun pursuant to NRCP 68 and NRS 17.115. Prior to trial, the district court excluded Schwartz’s expert witness. After a lengthy trial, the jury returned a defense verdict and the district court awarded Greenspun attorney’s fees and costs. Schwartz appealed the district court’s orders excluding his expert witness and awarding fees and costs. On cross appeal, Greenspun complains that the district court erroneously denied the motions to dismiss.
For the reasons hereafter discussed, we affirm the district court’s exclusion of Schwartz’s expert and the award of attorney’s fees and costs to Greenspun.

FACTS

Milton Schwartz is an officer and part owner of Yellow Cab Company and Checker Cab Company. The instant controversy stems from five columns entitled “Where I Stand” written by Brian Greenspun and the late Herman “Hank” Greenspun and published in the respondent newspaper, the Las Vegas Sun. In the articles, Greenspun denounced as unsafe the site which housed a 30,000 gallon propane tank used to fuel Schwartz’s cabs. The articles decried Schwartz and various government officials for failing to relocate the tank to a less populated area.
On June 5, 1985, Schwartz filed the instant action against the *1045 Sun and Greenspun, asserting claims for common law defamation and intentional infliction of emotional distress. Schwartz alleged that the articles falsely accused him and his companies of engaging in acts of bribery and other improprieties in connection with obtaining governmental approval for the site and operation of the propane tank.
In the midst of the litigation, Greenspun petitioned this court for extraordinary relief in connection with a discovery order. That proceeding terminated on September 29, 1988, in favor of Greenspun. See Las Vegas Sun v. District Court, 104 Nev. 508, 761 P.2d 849 (1988). No stay was in effect during the pendency of the writ proceedings.
On August 28, 1990, Greenspun filed a motion under NRCP 41(e) seeking dismissal of the action for failure to bring the case to trial within five years. Schwartz opposed the motion on the ground that the three-year saving provision of NRCP 41(e) extended the time within which to bring the case to trial to September 29, 1991. The district court denied Greenspun’s motion without opinion and trial was scheduled for September 16, 1991.
Approximately one month before trial, Greenspun again moved to dismiss under NRCP 41(e). Concurrently, Greenspun moved for summary judgment on the grounds that Schwartz had failed to prove constitutional malice by clear and convincing evidence. Greenspun argued that Schwartz was required to prove constitutional malice because Schwartz was a public figure and the newspaper articles involved matters of public concern. The district court again denied Greenspun’s motion to dismiss without opinion. It also denied Greenspun’s motion for summary judgment, ruling that Schwartz and the cab companies were not public figures.
On September 6, 1991, Greenspun extended an offer of judgment to Schwartz pursuant to NRCP 68 and NRS 17.115. Green-spun offered the three plaintiffs $25,000 each. The offer was rejected and the matter proceeded to trial.
Prior to the commencement of trial, the district court granted Greenspun’s motion in limine and excluded all newspaper articles not relevant to Schwartz’s claims. The district court also excluded Schwartz’s expert, Robert Lichter, whose testimony was to consist of an analysis of the excluded articles.
Voir dire began on September 16, 1991, and the jury was impanelled on September 17, 1991; however, the jury did not begin to hear the case until September 19, 1991. After a four-week trial, the jury returned a defense verdict.
Following the entry of judgment, Greenspun filed a motion for attorney’s fees and costs, together with memoranda and supple *1046 mental memoranda of costs and disbursements. Schwartz opposed the motion and a hearing was held on January 27, 1992. The district court awarded Greenspun attorney’s fees and costs pursuant to NRCP 68, NRS 17.115 and NRS 18.020. This appeal ensued.

DISCUSSION

On appeal, Schwartz assigns error to the district court’s order excluding his expert witness and awarding attorney’s fees and costs to Greenspun. Greenspun’s cross appeal challenges the district court’s rulings denying his motions to dismiss under NRCP 41(e).
1. Exclusion of Expert Witness
Schwartz retained Dr. S. Robert Lichter to analyze 193 articles from the Sun and the Las Vegas Review Journal, which discussed Schwartz. Schwartz asserts that based on a “content-analysis,” Dr. Lichter would have testified that Greenspun’s articles fell below the degree of care required by accepted journalistic standards. Schwartz also contends that Lichter would have testified regarding Greenspun’s state of mind, which was relevant to prove malice.
Exclusion of expert testimony is within the district court’s sound discretion. Griffin v. Rockwell Int’l, Inc., 96 Nev. 910, 911, 620 P.2d 862, 863 (1980). Absent an abuse of that discretion, this court will not interfere with the lower court’s ruling. Id. Upon careful consideration of the record and arguments on appeal, we are unable to discern an abuse of discretion by the trial judge. ,
Dr. Lichter’s testimony was irrelevant to the issue of constitutional malice because Schwartz’s claim was for common law defamation and the district court had ruled that the plaintiffs were private figures. See Nevada Indep. Broadcasting v. Allen, 99 Nev. 404, 414, 664 P.2d 337, 344 (1983). And, Schwartz’s offer of proof demonstrated that Dr. Lichter was not expressing an opinion on common law malice.[2] Dr. Lichter’s proffered testimony concerning professional journalistic standards was also irrelevant given the district court’s ruling that professional jour *1047 nalistic standards were inapplicable since Schwartz needed only to prove ordinary negligence.
In short, the testimony Schwartz intended to offer through Dr. Lichter would not have assisted the jury in understanding the evidence or in determining a fact in issue. See NRS 50.275. Thus, the testimony was properly excluded.
2. Attorney’s Fees and Costs
In a post-trial motion for attorney’s fees and costs, Greenspun requested $222,823.43 in costs and $277,771.25 in attorney’s fees. The district court awarded Greenspun $125,046.70 in costs and $150,000 in attorney’s fees, to be allocated among the three law firms representing the Greenspun defendants. Interest was awarded on the total amount of $275,046.70 from the time of entry of the order (March 19, 1992) until paid.
Schwartz contends that the award of attorney’s fees and costs was erroneous because: (1) the offer of judgment was untimely; (2) the district court awarded attorney’s fees without making specific findings as to each of the four factors announced in Beattie v. Thomas, 99 Nev. 579, 668 P.2d 268 (1983); and (3) the award of costs may include costs not recoverable under NRS 18.005. Each contention will be considered in turn.
A. Timeliness of Offer of Judgment
The trial in this matter was scheduled to commence on September 16, 1991. On September 6, 1991, Greenspun made an offer of judgment to Schwartz for a total amount of $75,000, divided equally among the three plaintiffs. The offer was made pursuant to NRCP 68 and NRS 17.115. Schwartz contends that the offer of judgment was untimely because it was not made more than ten days before trial began.
Under NRCP 68, an offer of judgment can be made “[a]t any time more than 10 days before the trial begins . . . .” The ten-day period is determined in accordance with NRCP 6(a).[3] See Polk v. Montgomery County, 130 F.R.D. 40, 42 (D. Md. 1990).
Schwartz maintains that the trial began on September 16, 1991 — the first day of voir dire. Contrarily, Greenspun contends that for purposes of Rule 68, trial begins with the presentation of the case to the fact-finder, which in this case did not occur until September 19.
*1048 In determining when trial commences for purposes of NRCP 68, it is necessary to consider the policy underlying the rule. With respect to NRCP 41(e), we have said that a case is brought to trial by, inter alia, examining jurors. See Smith v. Timm, 96 Nev. 197, 200, 606 P.2d 530, 531 (1980). For the purpose of determining double jeopardy, trial begins when the jury is impan-elled and sworn. Serfass v. United States, 420 U.S. 377, 388 (1975). Regarding Rule 68, the “infrequently encountered” issue of when trial begins has been held to be “when the trial judge calls the proceedings to order and actually commences to hear the case.” Greenwood v. Stevenson, 88 F.R.D. 225, 229 (D.R.I. 1980).
In Greenwood, the jury was impanelled on April 2, 1980, but because of a pending criminal trial, the matter was not scheduled to proceed to trial until June 1st. In the interim, the defendants served an oifer of judgment which they later desired to retract. The defendants argued that the offer was untimely because it was made after the jury was impanelled and thus after the trial had begun. The federal court in Greenwood noted that in several other contexts, jury selection seemed to mark the official beginning of trial. The court opined that selecting the impanelling of the jury as a measuring point “reflected an accommodation of policy and practicality.” 88 F.R.D. at 227. The court offered the following examples: In Hopt v. Utah, 110 U.S. 574 (1884), a criminal case, voir dire marked the beginning of trial to further a policy of allowing a criminal defendant to be present at a “most crucial stage” of the guilt-determining phase. In United States ex rel. Walker v. Gunn, 511 F.2d 1024, 1026 (9th Cir.), cert. denied 423 U.S. 849 (1975), a civil removal action, trial was held to commence “when the veniremen are called to be examined.” The policy to be furthered in that case was minimization of federal interference with state proceedings. Greenwood, 88 F.R.D. at 228.
In concluding that the impanelling of the jury did not mark the beginning of trial for purposes of Rule 68, the Greenwood court reasoned:
In the context of Rule 68, there is no such compelling policy to mandate the choice of impanelling as the “beginning” of the trial. The purposes of the Rule are to encourage settlements, thereby avoiding the expense to the parties and the court of protracted litigation, and to protect a party who offers a good faith settlement proposal from liability for subsequently accrued costs (citations omitted) .... Since a late settlement that avoids some of the trial costs would seem to be better than no settlement at all, the policy of the Rule would appear best served by selecting the last possible point in time for cutting off Rule 68 offers.
*1049 88 F.R.D. at 228. See also Cover v. Chicago Eye Shield Co., 136 F.2d 374 (7th Cir.), cert. denied, 320 U.S. 749 (1943).
[Headnote 7]
The language of Fed. R. Civ. R 68 concerning the time by which an offer of judgment must be served is identical to our Rule 68. The purpose of Rule 68 is to encourage the settlement of a suit before trial. Morgan v. Demille, 106 Nev. 671, 674, 799 P.2d 561, 563 (1990). We agree with the court in Greenwood that the policy behind Rule 68 is best served by interpreting the phrase “before trial begins” to refer to the point in trial when the actual presentation of evidence commences. In the instant case, the presentation of evidence began on September 19th — more than' ten days after the offer of judgment was made. Accordingly, we hold that Greenspun’s offer of judgment was timely.
B. Propriety of Attorney’s Fees Award
Schwartz alternatively contends that the district court abused its discretion in awarding attorney’s fees because it failed to specifically consider each of the following factors:
(1) whether the plaintiff’s claim was brought in good faith; (2) whether the defendants’ offer of judgment as reasonable and in good faith in both its timing and amount; (3) whether the plaintiff’s decision to reject the offer and proceed to trial was grossly unreasonable or in bad faith; and (4) whether the fees sought by the offeror are reasonable and justified in amount.
See Beattie, 99 Nev. at 588-89, 668 P.2d at 274. We disagree.
Beattie requires the district court to weigh the enumerated factors before awarding up to the full amount requested. If the district court fails to consider these factors and makes no findings based upon the evidence “that the attorney’s fees sought are reasonable and justified, it is an abuse of discretion for the court to award the full amount of the fees requested.” Id. at 589, 668 R2d at 274. The district court need not, however, make explicit findings as to all of the factors where support for an implicit ruling regarding one or more of the factors is clear on the record. See National Union Fire Ins. v. Pratt and Whitney, 107 Nev. 535, 543.44, 815 P.2d 601, 606 (1991).
The record reveals that the district court considered and evaluated the Beattie factors in determining whether to award Green-spun attorney’s fees. The district court reviewed written points and authorities addressing each of the Beattie factors as they pertained to the facts of this case and heard the argument of counsel on the subject. In its order awarding fees and costs, the *1050 district court indicated that it had considered and evaluated the four factors in finding that $150,000 was a reasonable award for attorney’s fees. Although the district court failed to enter express findings regarding the Beattie factors, it also awarded fees in an amount that was substantially less than the sum requested by Greenspun. We conclude on this record that the district court’s award of fees should be affirmed. However, we caution the trial bench to provide written support under the Beattie factors for awards of attorney’s fees made pursuant to offers of judgment even where the award is less than the sum requested. It is difficult at best for this court to review claims of error in the award of such fees where the courts have failed to memorialize, in succinct terms, the justification or rationale for the awards. Such findings are of special importance where, as here, large sums are awarded as fees. Nevertheless, given the fact that the district court judge did consider the Beattie factors in reaching his finding, and given the magnitude of the reduction in the amount of fees awarded compared to the total fees requested, we have concluded that it would simply add to the costs of this protracted litigation to remand for a more detailed justification of the award by the trial judge.
C. Propriety of Costs Award
In his motion for costs, Greenspun requested approximately $222,823; the motion was made pursuant to NRS 18.020(3) and 17.115, as well as Rule 68. Schwartz opposed the motion on the basis that certain items of costs were not specifically authorized by statute and that the amounts were unreasonable. After a hearing, the district court issued its order awarding Greenspun, as the prevailing party, $125,000 in costs. Schwartz appealed. [Headnotes 10-12]
An award of costs to the prevailing party is mandated where, as here, damages were sought in an amount in excess of $2,500. See NRS 18.020(3); Day v. West Coast Holdings, 101 Nev. 260, 264, 699 P.2d 1067, 1070 (1985) (allowance of costs in action at law is mandatory and not subject to court’s discretion). Costs were also payable to Greenspun as a matter of right under NRS 17.115(4)(b) (where judgment is not more favorable than the offer, the offeror is entitled to taxable costs). The district court retains discretion, however, in determining the reasonableness of the amounts and the items of cost to be awarded. See Bergmann v. Boyce, 109 Nev. 670, 856 P.2d 560 (1993); Arnold v. Mt. Wheeler Power, 101 Nev. 612, 615, 707 P.2d 1137, 1139 (1985); see generally NRS 18.005.
*1051 Schwartz insists that the district court abused its discretion by failing to specify items of cost allowed and disallowed, thereby leaving to speculation whether the awarded costs included items which are not specified in NRS 18.005.[4]
Unfortunately, the record, though voluminous, provides us with no basis for determining whether the district court abused its discretion in rendering the cost award. However, where, as here, the record is as susceptible of one conclusion as another, it will not be presumed that the district court erred. Dillon v. Dillon, 68 Nev. 151, 153, 227 P.2d 783, 784 (1951). We will not reverse an order or judgment unless error is affirmatively shown. Charmicor, Inc., v. Bradshaw Finance Co., 92 Nev. 310, 313, 550 P.2d 413, 415 (1976).
Schwartz has failed to demonstrate that the district court erred in its cost award. The record is devoid of any evidence which demonstrates that Schwartz sought to obtain an itemization of the *1052 costs included in the award. As the party challenging the award of costs, Schwartz should have created and transmitted to this court a record that would demonstrate error in the court below. See M & R Investment Co. v. Mandarino, 103 Nev. 711, 718, 748 P.2d 488, 493 (1987). His failure to do so precludes review of this issue. The cost award is therefore affirmed.

CONCLUSION

We conclude that the issues raised by Schwartz are without merit. It is therefore unnecessary to address the issues raised in the cross appeal. The district court did not err in excluding the expert testimony proffered by Schwartz or in its award of costs and attorney’s fees to Greenspun. Accordingly, the judgment entered by the district court is affirmed.[5]
Young and Shearing, JJ., concur.

 The Estate of Herman Milton Greenspun was substituted in this action for Herman Greenspun, who died prior to the trial in this matter.

 Common law malice focuses on ill will and hatred harbored by the defendant against the plaintiff. NRS 41.332. By contrast, constitutional malice focuses on the defendant’s belief regarding the truthfulness of his statements. Nevada Indep. Broadcasting, 99 Nev. at 414, 664 P.2d at 344.

 NRCP 6(a) provides in pertinent part: “In computing any period of time prescribed or allowed by these rules ... the day of the act, event, or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included [with some exceptions] . . .

 NRS 18.005 defines costs as:
1. Clerks’ fees.
2. Reporters’ fees for depositions, including a reporter’s fee for one copy of each deposition.
3. Jurors’ fees and expenses, together with reasonable compensation of an officer appointed to act in accordance with NRS 16.120.
4. Fees for witnesses at trial, pretrial hearings and deposing witnesses, unless the court finds that the witness was called at the instance of the prevailing party without reason or necessity.
5. Reasonable fees of not more than five expert witnesses in an amount of not more than $1,500 for each witness, unless the court allows a larger fee after determining that the circumstances surrounding the expert’s testimony were of such necessity as to require the larger fee.
6. Reasonable fees of necessary interpreters.
7. The fee of any sheriff or licensed process server for the delivery or service of any summons or subp[o]ena used in the action, unless the court determines that the service was not necessary.
8. The fees of the official reporter or reporter pro tempore.
9. Reasonable costs for any bond or undertaking required as part of the action.
10. Fees of a court bailiff who was required to work overtime.
11. Reasonable costs for telecopies.
12. Reasonable costs for photocopies.
13. Reasonable costs for long distance telephone calls.
14. Reasonable costs for postage.
15. Reasonable costs for travel and lodging incurred taking depositions and conducting discovery.
16. Any other reasonable and necessary expense incurred in connection with the action.

 The Honorable Charles E. Springer, Justice, did not participate in the decision of this appeal.